IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MALIBU MEDIA, LLC : | | |
|     Plaintiff, : | | |
| : | CIVIL ACTION | |
| v. : | | |
| : | | |
| : | | |
| JOHN DOES, 1-18 : | No. 12-2095 | |
| : | | |
|     Defendants. | | |

ORDER

AND NOW, this 27th day of September 2012, upon consideration of Defendant John Doe 14's Motions to Quash, Sever, and for a Protective Order (Doc. No. 15), Plaintiff's Response Thereto (Doc. No. 20), and Defendant's Response in Support of Motions to Quash, Sever, and for a Protective Order (Doc. No. 24), it is hereby ORDERED that Defendant's motion to quash, to sever, and for a protective order are all DENIED for the reasons that follow.

Plaintiff filed the instant suit on April 19, 2012, alleging that the collective Defendants infringed Plaintiff's rights under the United States Copyright Act of 1976, 17 U.S.C. §§ 101, *et. seq*. In particular, Plaintiff claims that through the use of BitTorrent, a peer-to-peer file sharing protocol, Defendants illegally downloaded Plaintiff's copyrighted pornographic films.

A proper understanding of the case and of the matters presently before the Court requires understanding the technology underlying BitTorrent. A BitTorrent user that wants to upload a new file, such as one containing a copyrighted film, is known as an "initial seeder," and he or she begins the process by creating a "torrent file" using the BitTorrent Client that he or she has installed onto his or her computer. (Compl. at 9.) The Client takes the computer file and divides

it into pieces. (Id.) According to the complaint, "torrent sites" are websites that index torrent files. (Id. at 10.) An individual downloading a file visits a torrent site, and when he or she elects to download a computer file, the BitTorrent protocol causes the initial seed's computer to send different pieces of the file to the individual seeking to download the computer file. (Id.) Once he or she receives a piece of the file, he or she also begins transmitting that piece to other peers seeking to download that file, thus also becoming a seeder. (Id.) Thus, all of the seeders work symbiotically in what is called a "swarm" to download files. (Id.) Once a Defendant downloads the full file, the BitTorrent Client reassembles the pieces to enable the Defendant to view the movie. (Id. at 11.)

In the instant case, Plaintiff's claims concern Defendants' alleged infringement of Plaintiff's copyrights by illegally downloading up to twenty-two of Plaintiff's copyrighted pornographic films by transmitting a file containing these movies to one another. Plaintiff alleges that from December 2011 to March 2012, Defendants thus violated Plaintiff's exclusive right to (a) reproduce Plaintiff's copyrighted works, (b) redistribute copies of those works, (c) perform those copyrighted works, and (d) display those works. (Id. at 13.)

Plaintiff has identified the collective Defendants' internet service providers ("ISPs") and now seeks to subpoena information regarding the identities of the Defendants in order to prosecute them for copyright infringement. The instant motions concern (1) whether the Defendant should be severed from this action, (2) whether Plaintiff may be allowed to discover the identity of the Defendant or whether the subpoena should be quashed, and (3) whether this Court should issue a protective order to limit the disclosure of the subpoenaed information. The Court addresses each question in turn.

I.  Motion to Sever

Defendant argues that joinder is inappropriate in the present instance, and that he or she should be severed from the present action, given that he or she has been joined with seventeen other Defendants alleged to belong to the same "swarm."  To support his or her argument, Defendant cites numerous cases from other districts where the court determined that joinder was inappropriate in similar cases.  It is true that the courts are divided as to whether multiple unnamed defendants should be joined in actions involving copyright infringement claims.  See, e.g., Malibu Media, LLC v. John Does 1-15, No. 12-2077, 2012 WL 3089383 (E.D. Pa. July 30, 2012) (finding joinder appropriate); Patrick Collins, Inc. v. John Does 1-21, No. 11-13232, 2012 WL 1190840 (E.D. Mich. Apr.5, 2012) (permitting joinder); Raw Films, 2012 WL 1019067, at *2 (allowing joinder); CineTel Films, Inc. v. Does 1-1,052,  -- F. Supp.2d --, 2012 WL 1142272 (D. Md. Apr. 4, 2012) (finding joinder inappropriate); Hard Drive Prods. Inc. v. Does 1-30, No. 11-345, 2011 WL 4915551 (E.D. Va. Oct. 17, 2011) (joinder inappropriate).  For the reasons that follow, however, we are persuaded that joinder is proper in this case.

Pursuant to Federal Rule of Civil Procedure 20, persons may be joined in one action as defendants if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20.

The Supreme Court has held that "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966). "In exercising its discretion [to join parties], the District Court must provide a reasoned analysis that comports with the requirements of the Rule, and that is based on the specific fact pattern presented by the plaintiffs and claims before the court." Boretsky v. Governor of New Jersey, 433 Fed. App'x 73, 77 (3d Cir. 2011) (quoting Hagan v. Rogers, 570 F.3d 146,157 (3d Cir.2009)). Although the Third Circuit has not yet parsed the meaning of the phrase "arising out of the same transaction, occurrence, or series of transactions or occurrences" as used in Rule 20, the Third Circuit has interpreted similar language in Rule 13. In Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc., 292 F.3d 384, 389-90 (3d Cir. 2002), the Third Circuit found the phrase "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" to mean that claims must "bear a logical relationship" to one another. Id. at 390. The court noted that "logical relationship" is a liberally construed term meant to promote judicial economy. Id.

In the instant case, Plaintiff alleges that the collective Defendants utilized BitTorrent, a peer-to-peer file sharing protocol, to download the copyrighted movies. Plaintiff alleges that the defendants participated in the same "swarm." According to the complaint, "to reduce the load on the source computer, rather than downloading a file from a single source computer . . . the BitTorrent protocol allows users to join a 'swarm' of host computers to download and upload from each other simultaneously (one computer connected to numerous computers)." (Compl. at 4.) As noted above, an initial "seeder" created a "torrent" file onto the Client, which divided that

4

file into pieces. According to the complaint, "torrent sites" are websites that index torrent files. (Id. at 6.) When an individual downloading a file visits a torrent site, they elect to download a computer file, and the BitTorrent protocol causes the initial seeder's computer to send different pieces of the file to the peers seeking to download the computer file. (Id.) Once an individual receives a piece of the file, he or she also begins transmitting that piece to other peers seeking to download that file. (Id.)

Given this set of facts, Defendant argues that joinder in the instant case is improper, as the joined individuals in the instant action merely constitute a group of strangers acting alone, and thus cannot be said to have participated in the "same transaction, occurrence, or series of transactions or occurrences."[1] Fed. R. Civ. P. 20. In particular, Defendant argues that participation in the same swarm does not constitute the same transaction or occurrence.

However, Rule 20 requires only that the right to relief "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20. The logical relationship test, as articulated by the Third Circuit, involves liberally construing the relationship between claims. Given that the language of Rule 20 is even more permissive than the language contained in Rule 13, as it allows for joinder of defendants where the right to relief arises out of the same "series of transactions or occurrences," this Court concludes that the liberal standard is satisfied by participation in the same swarm.

---

[1] Doe 14 argues that Plaintiff alleges only that he participated in a "single act" occurring on February 14, 2012 at 8:58 PM, and "lumps this act in with approximately 18 separate alleged downloads by others over a period of approximately three-and-a-half months." (Doc. No. 15 at 3-4). However, the Plaintiff makes clear in its complaint that the "hit date," which Defendant refers to, is "not evidence of when a particular Defendant started the download but [is] merely evidence of when the investigator's server recorded an IP address sending a particular piece of data." (Compl. at 1 n.1).

Defendant further argues that Plaintiff fails to allege that Defendants knew about each other or acted in concert with one another. However, nothing in the text of Rule 20 requires knowledge on the part of the participant that other individuals are participants in the same act or series of acts. Rather, "the fact that the defendants are independent actors does not preclude joinder as long as their actions are part of the 'same transaction, occurrence, or series of transactions or occurrences.'" In re EMC Corp., 677 F.3d 1351, 1356 (Fed. Cir. 2012) (quoting Fed. R. Civ. P. 20). The Federal Circuit has held that "[c]laims against independent defendants (i.e., situations in which the defendants are not acting in concert) cannot be joined under rule 20's transaction-or-occurrence test unless the facts underlying the claim of infringement asserted against each defendant share an aggregate of operative facts." Id. at 1359.

The Federal Circuit has described this requirement as meaning that "shared, overlapping facts . . . give rise to each cause of action, and not just distinct, albeit coincidentally identical, facts." Id. In the context of patents, the Federal Circuit has noted that relevant considerations in determining whether this test is met include whether the alleged acts of infringement occurred during the same time period, the existence of some relationship among the defendants, the use of identically sourced components, licensing or technology agreements between the defendants, overlap of the products' or processes' development and manufacture, and whether the case involves a claim for lost profits. Id. At 1359-60. Although not all of the factors are relevant, this test is instructive in the instant case in that the defendants allegedly committed the infringements during the same time period, participated in the same swarm, and acquired the copyrighted material through participation in the same process. There is a significant overlap in the aggregate of operative facts that control Plaintiff's claims against the collective defendants, thus illustrating

a "logical relationship" between the claims against the collective defendants. See Third Degree Films v. Does 1-36, No. 11-15200, 2012 WL 2522151 (E.D. Mich. May 29, 2012) (utilizing the test of EMC Corp. to find that Plaintiff had sufficiently pleaded "shared, overlapping facts" between members of the same swarm to support joinder in a case involving copyright infringement through use of BitTorrent).

Finally, this Court reminds both parties that we retain discretion regarding the proper time to sever parties. See Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."); Malibu Media, 2012 WL 3089383, at *4 (noting that any "detrimental impacts imparted by our decision to maintain the joinder of defendants is blunted by our power under Rule 21 to drop any party at any time that we find to be a misjoinder"). We recognize that, upon further discovery, each Defendant may present different factual and legal defenses. At that time, Defendant's argument that he is improperly joined may be meritorious. However, based upon the commonality at this stage of litigation, joinder remains proper. Therefore, Defendant's motion to sever will be denied without prejudice.

II.     Motion to Quash

The "[u]se of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified." Blakeslee v. Clinton Cty, 336 Fed. App'x 248, 250 (3d Cir. 2009). Where reasonable discovery does not unveil the proper identities of John Does, however, courts must dismiss the John Doe defendants. Id. at 250-51. In the instant case, Plaintiff seeks to discover the identities of the John Doe defendants, including Doe 14, through the served subpoenas that form the object of dispute in the instant motion.

Defendant argues that the subpoena seeking his identity should be quashed because (1) the subpoena seeks privileged information, (2) this Court lacks personal jurisdiction over Defendants (including Doe 14), (3) the subpoena subjects Defendant to an undue burden, and (4) the subpoena seeks information that is not relevant to this allegation.  We address each argument in turn.

      1.      Disclosure of Privileged Information

Federal Rule of Civil Procedure 45 governs the standard for quashing a subpoena.  Under Rule 45(c)(3)(A)(iii), courts must quash or modify a subpoena that would disclose privileged information where no applicable exceptions or waivers exist.  Defendant cites to this rule and argues that this subpoena would cause the disclosure of privileged information.  However, Defendant, as the moving party, bears the burden to demonstrate that (1) a privilege exists, and (2) the subpoena would disclose such information.  See City of St. Petersburg v. Total Containment, Inc., No. 07-191, 2008 WL 1995298, at *2 (E.D.Pa. May 5, 2004).  Because Defendant fails to assert any applicable claim of privilege, this argument fails.

Defendant also argues that the subpoena must be quashed because "it seeks disclosure of personal identification information considered to be confidential."  (Def.'s Mot. to Quash at 7).  We interpret this argument, as have other courts in our district, to implicate Defendant's First Amendment right to remain anonymous.  See Malibu Media, 2012 WL 3089383, at *6 (E.D.Pa. July 30, 2012); Raw Films, Ltd. v. John Does 1-15, No. 11-7248, 2012 WL 1019067, at *6 (E.D. Pa. Mar. 26, 2012); see also Sony Music Entertainment, Inc. et al., v. Does 1-40, 326 F.Supp.2d 556, 564 (S.D.N.Y. 2004).

The First Amendment protects anonymous speech.  See, e.g., Buckley v. American Constitutional Law Foundation, Inc., 525 U.S. 182, 199–200, 119 (1999); McIntyre v. Ohio Elections Commission, 514 U.S. 334, 341–342 (1995); see also NAACP v. Alabama, 357 U.S. 449, 462, 466 (1958).  However, the First Amendment "does not . . . provide a license for copyright infringement."  Astia Records, LLC v. Doe 3, 604 F.3d 110 (2d Cir. 2010).  "Thus, to the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected by the First Amendment."  Id.

Thus, we must determine whether the First Amendment protects "the identities of internet users allegedly engaging in the unauthorized transmission of copyrighted materials from discovery requests by plaintiffs attempting to protect their copyrighted works."  Malibu Media, 2012 WL 3089383, at *7.  The Third Circuit has not provided a specific standard to resolve this issue.  The Second Circuit, however, has provided several factors to consider, which include: (1) prima facie claim of copyright infringement; (2) the specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) the central need for the subpoenaed information; and (5) the objecting party's expectation of privacy.  Astia Records, LLC, 604 F.3d at 119.  We will briefly address each of these factors in turn.

First, Plaintiff has alleged a prima facie claim of copyright infringement.  A prima facie claim of copyright infringement requires (1) ownership of a valid copyright, and (2) the copying of constituent elements of the work that are original.  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).  Here, Plaintiff satisfies both elements because it has (1) produced a document evidencing that a valid copyright exists for the pornographic films at issue (See

9

Compl. Ex. B), and (2) alleged that Defendant has illegally copied these films through BitTorrent software. Therefore, the first factor weighs against quashing the subpoena.

Second, the subpoena is sufficiently specific. Plaintiff seeks the name, address, telephone number, e-mail address, and Media Access Control ("MAC") address of the Defendant. Plaintiff seeks only the specific information necessary to identify the Defendant. See Malibu Media, LLC v. John Does, No. 1277, 2012 WL 3089383, *7 (E.D.Pa. July 30, 2012); Raw Films, Ltd., 2012 WL 1019067, at *7 (subpoena seeking this exact same information satisfies specificity requirement). Therefore, the second factor weighs against quashing the subpoena.

Third, Defendants have failed to satisfy their burden to show alternative means of obtaining the subpoenaed information. Therefore, the third factor weighs against quashing the subpoena.

Fourth, the Plaintiffs have alleged a central need for the subpoenaed information. As mentioned above, a plaintiff is required to identify John Doe defendants to avoid dismissal of their claims. Blakeslee, 336 Fed. App'x at 250 (3d Cir. 2009). Here, the subpoenaed information is highly critical because its absence prevents the Plaintiff from serving process on the defendants and proceeding with the litigation. Therefore, the fourth factor weighs against quashing the subpoena

Fifth, the Defendants, including Doe 14, have a minimal expectation of privacy. Courts agree that internet users engaging in peer-to-peer file sharing have a lessened expectation of privacy. See Malibu Media, 2012 WL 3089383, at *8; Raw Films, Ltd., 2012 WL 1019067, at *8. This expectation is decreased further where the sharing involves copyrighted works. Sony Music Entertainment Inc., 326 F. Supp. 2d at 566-67. Moreover, where, as here, defendants have

already volunteered the sought after information to their internet service provider, courts are less willing to find any reasonable expectation of privacy.  See First Time Videos, LLC v. Does 1-500, 276 F.R.D. 241, 247 (N.D. Ill. 2011); Achte/Nuente Boll Kino Beteiligungs Gmbh & Co. v. Does 1-4, 577, 736, F.Supp. 2d 212, 216 (D.D.C. 2010).  Therefore, the fifth factor weighs against quashing the subpoena.

In sum, not one factor weighs in favor of quashing the subpoena.  Thus, Plaintiff's need for the subscriber information clearly outweighs Defendant's limited First Amendment protection in this case.

    2.    Personal Jurisdiction

Defendant argues that this Court lacks personal jurisdiction over Doe 14 and all of the other defendants because they have not been identified, served with process, or answered.  Without the identity of the defendants, this Court is not able to sufficiently determine the nature of the contacts between the various defendants and the forum state.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985).  Therefore, we find that Defendant's objection to personal jurisdiction is premature at this early stage in the litigation.  See Cinetel Films, Inc. and Family of the Year Productions, LLC v. Does 1-1,052, No. 11-02438, 2012 WL 1142272, at *11 (D. Md. Apr. 4, 2012); Maverick Entertainment Group, Inc. v. Does 1-2, 115, 810 F. Supp. 2d 1, 18 (D.D.C. 2011); Sony Music Entertainment Inc., 326 F. Supp. 2d at 567 (all finding personal jurisdiction objections to be premature prior to proper identification of the "John Doe" defendants).

3.   Undue Burden

Under Federal Rule of Civil Procedure 45, a court must quash or modify a subpoena that subjects a person to an undue burden. See Fed. R. Civ. P. 45(c)(3)(A)(iv). The subpoena at issue in this case fails to unduly burden Defendant for two reasons. First, the subpoena is directed at the ISP, and not Defendant. The ISP has not challenged the request, which suggests that no great burden has been imposed on the subpoenaed party. Cf. Malibu Media, 2012 WL 3089383, at *8 ("It is the service provider that is compelled to disclose the information, and thus, its prerogative to claim an undue burden."). Because no subpoena has been issued on Defendant, "there is no burden on Defendant to produce any information." Id. (emphasis removed).

Second, Defendant claims that "the risk of reputational injury to an individual from public exposure and association with the Malibu allegation—even if later disproven—is too great and presents and undue burden." (Def.'s Mot. to Quash at 9). An undue burden requires proof of a "clearly defined and serious injury." City of St. Petersburg, 2008 WL 1995298, at *2 (citing Transcor, Inc. v. Furney Charters, Inc., 212 F.R.D. 588, 592-93 (D. Kans. 2003)). Here, Defendant's broad claim of reputational injury fails to demonstrate a "clearly defined and serious injury." Courts in this district have previously explained that while "[w]e acknowledge that 'there is some social stigma attached to consuming pornography . . . it is the rare civil lawsuit in which defendant is not accused of behavior of which others may disapprove.'" Malibu Media, 2012 WL 3089383, at *8 (quoting Collins v. John Does 1-54, No. 11-1602, 2012 WL 911432, at *4 (D. Ariz. Mar. 19, 2012)). Regardless, any "potential embarrassment . . . of being associated with allegations of infringing hardcore pornography does not constitute an exceptional circumstance that would warrant allowing the defendants to proceed anonymously." Id. (quoting

Liberty Media Holdings, LLC v. Swarm Sharing Hash File, No. 11-10802, 2011 WL 5161453, at *7 (D.Mass. Oct. 31, 2011)). Therefore, Defendant has failed to prove that he or she has suffered an undue burden sufficient to warrant the quashing of a subpoena.

    4.     Relevance

The scope of discovery in federal litigation is broad. See Fed. R. Civ. P. 26. Parties are permitted to discover any relevant, unprivileged material. Id. For purposes of discovery, material is relevant so long as it includes information that is reasonably calculated to lead to admissible information. Id. "Accordingly, the relevancy standard is satisfied and discovery requests are to be granted if there is any possibility that the information may be relevant to the general subject matter of the action." Malibu Media, 2012 WL 3089383, at *4.

Here, Defendant argues that the subpoena should never have been issued because the information sought is not relevant to Plaintiff's allegations. Specifically, Defendant contends that the IP address sought by Plaintiffs may not reveal the identity of the actual infringer.

We acknowledge that Defendant may be correct that a third-party may have committed the acts attributed to Defendant. Even assuming this turns out to be true, however, Defendants' name and information will aid in finding the true identity of the infringer. "This is especially true, as in this case, where there is no other way to identify the proper defendants and proceed with claims against them." Id. at 8. Additionally, if Doe 14 is not in fact the user who committed the act of infringement, given that an unauthorized user may have accessed his or her wireless network, the "moving Doe may raise these and any other nonfrivolous defenses in the course of litigating the case." Raw Films, 2012 WL 1019067, at *6 n. 3. In light of all these facts, we find the information sought by the subpoena to be highly relevant.

Upon addressing each of Defendant's argument in turn, we find none persuasive. Therefore, Defendant's motion to quash the subpoena is denied without prejudice.

III.   Protective Order

Defendant seeks a protective order to limit disclosure of Doe 14's subpoenaed information until further discovery proceedings.  Under Federal Rule of Civil Procedure 26(c), a court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Defendant reiterates that disclosure of his identity will cause "reputational injury and embarrassment." (Def.'s Mot. to Quash at 12).  A party seeking a protective order "whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious." Shingara v. Skiles, 420 F.3d 301, 307 (3d Cir. 2005) (quoting Pansy v. Borough of Stroudsburg, 23 F.3d 772, 787 (3d Cir. 1994)).  For reasons discussed earlier, the potential embarrassment of being associated with the allegations in this case are not "particularly serious" as to warrant the issuance of a protective order.  Therefore, Defendant's motion for a protective order is a denied.

IV.   Conclusion

For the foregoing reasons, Defendant's Motion to Quash, Sever, and for a Protective Order (Doc. No. 15) is DENIED.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.